IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRYANT P., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:19-CV-402-L-BK |
| | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636 and *Special Order* 3, this case was referred to the undersigned United States magistrate judge for pretrial management, including issuing findings and a recommended disposition. As detailed here, *Plaintiff's Motion for Summary Judgment*, Doc. 16, should be **DENIED**, *Defendant's Motion for Summary Judgement*, Doc. 17, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff seeks judicial review of a final decision of the Commissioner denying his claim for supplemental security income under Title II of the Social Security Act ("the Act"). Plaintiff applied for supplemental security income in September 2015, alleging that he had been disabled since May 2014 due to depression and insomnia. Doc. 13-1 at 15, 70. Plaintiff's claim was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g); Doc. 13-1 at 4.

**B. Factual Summary**

Plaintiff was 45 years old at the time of the administrative hearing. Doc. 13-1 at 38. He attended high school through the 12th grade but did not graduate or obtain a GED. Doc. 13-1 at 38-39. He has past relevant work experience as a forklift operator and a hand packager for a temp agency. Doc. 13-1 at 41-44. At the administrative hearing, Plaintiff testified that he takes Trazodone, a sleeping aid, and Celexa, an anti-depressant, to combat his major depressive disorder. Doc. 13-1 at 47-48, 50. Plaintiff also testified that he suffers from intermittent asthma, which is triggered by changes in the weather. Doc. 13-1 at 51. Plaintiff averred that he was convicted of sexual assault of a minor and served three years in prison. Doc. 13-1 at 39-40. Plaintiff stated that he does not have a drinking problem, but that "someone else" might say he does. Doc. 13-1 at 40.

The medical evidence reveals that Plaintiff received mental health treatment from Dallas MetroCare from March 2015 to August 2017. Doc. 13-1 at 265, 377. During the initial visit, Plaintiff stated "I can't get myself going. I am down a lot, problem being around the people." Doc. 13-1 at 265. Plaintiff reported that he became "depressed in prison but he did not realize it until he was released from prison and started on treatment." Doc. 13-1 at 265. He also claimed to (1) hear voices that tell him to do "crazy stuff," (2) feel uncomfortable around people, (3) be easily irritated, and (4) have suicidal thoughts two to three times a week. Doc. 13-1 at 265-66.

Plaintiff's primary diagnosis from Dallas MetroCare was major depressive disorder, recurrent episode, unspecified, and mild intermittent asthma, uncomplicated. Doc. 13-1 at 377. However, whenever he was seen at MetroCare, Plaintiff was consistently noted to be adequately groomed, cooperative and organized in his thoughts, have intact memory, and be fully oriented. Doc. 13-1 at 277, 286, 288, 290, 293, 295, 297, 303, 308, 331, 427, 429. Additionally, Plaintiff

reported no physical limitations during his numerous visits to MetroCare, and he related that his medications were working well, that he was able to dress, bathe, and groom himself, and that he sometimes cooked, cleaned the house, and helped with the dishes. Doc. 13-1 at 52-53; 277, 286, 288, 290, 293-95, 297, 303, 308, 331, 427, 429.

## C.  The ALJ's Findings

The ALJ held that Plaintiff had the severe impairments of depressive disorder, social anxiety, mild intermittent asthma, and a remote history of alcohol abuse. Doc. 13-1 at 17. After consideration of the evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

(1) must avoid concentrated exposure to extreme heat, cold, wetness, and humidity;

(2) must avoid moderate exposure to respiratory irritants, such as dusts, fumes, smoke, and gases;

(3) may never interact with the public, notwithstanding incidental contact, but occasionally interact with supervisors and co-workers, provided work tasks can be performed individually and without having to cooperate closely with others as part of a team;

(4) cannot work around children, such as in schools or daycare centers; and

(5) cannot be exposed to alcohol, such as in a bar, restaurant, or liquor store.

Doc. 13-1 at 20.

Based on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff was capable of performing his past relevant work of forklift operator and hand packager. Doc. 13-1 at 27. The ALJ thus concluded that Plaintiff was not disabled. Doc. 13-1 at 28.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past relevant work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such

relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### III.  ANALYSIS

Plaintiff raises three issues on appeal. He claims that the ALJ: (1) committed legal error in determining what constituted Plaintiff's past relevant work; (2) committed legal error in finding that Plaintiff could perform his past relevant work in light of the ALJ's RFC determination; and (3) failed to fully develop the record in order to assess whether Plaintiff's impairments met or equaled a listed impairment based on criteria that changed before the ALJ issued his decision. Doc. 16 at 5.

**A. The ALJ's error in finding Plaintiff had past relevant work as a hand packager, was harmless.**

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that he could perform his past relevant work as a forklift operator and a hand packager within the meaning of the regulations because he did not (1) work at either job for long enough to become proficient and (2) earn enough at either job to constitute substantial gainful activity ("SGA"). Doc. 16 at 9-16.

As explained *infra*, Plaintiff's argument has some merit; nevertheless it is not determinative. Plaintiff's work as forklift operator qualifies as past relevant work but his work as a hand packager does not. However, because Plaintiff's forklift operator job qualifies as past relevant work, it is of no moment that his hand packager job does not.

A disability applicant's work history constitutes "past relevant work" only if (1) the claimant performed the work within the last 15 years;[1] (2) the work lasted long enough for the claimant to learn how to perform the job; and (3) the work constituted SGA. 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a). A number of charts and regulations determine when a claimant's earnings rise to the level of SGA. 20 C.F.R. § 404.1574(b)(2). When the claimant's monthly earnings exceed a particular threshold for any given year, SGA is indicated. *Id.* However, if the claimant's monthly earnings do not exceed the threshold, a rebuttable presumption arises that the job is not SGA and thus, by definition, is not past relevant work. *Copeland v. Colvin*, 771 F.3d 920, 925 (5th Cir. 2014).

A forklift operator is classified as having a Specific Vocational Preparation ("SVP") of three. Doc. 13-1 at 28. An SVP of three requires the employee to perform the work "over 1 month up to and including 3 months" to become proficient.[2] The evidence of record shows that Plaintiff's only employment in 2013 was as a forklift operator for one-to-two months. *See* Doc. 13-1 at 206 (Work History Report stating that Plaintiff worked as a forklift operator from August 15, 2013 to September 17, 2013—34 days); *see also* Doc. 13-1 at 42 (Plaintiff testified that he

---

[1] There is no dispute that at the time of the administrative hearing, Plaintiff had worked as a forklift operator and a hand packager within the last 15 years. *See* Doc. 13-1 at 27, 41-44, 206.

[2] U.S. Dep't of Labor, *Dictionary of Occupational Titles* App. C, *available at* https://www.oalj. dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM (last visited March 3, 2020).

worked as a forklift operator for "about two months, if it was that."). In 2013, SGA monthly earnings were capped at $1,040.00 per month.[3] Plaintiff earned $2,253.00 in 2013. Doc. 13-1 at 41. Thus, under the most conservative calculation, Plaintiff worked as a forklift operator for two months and earned $1,126.50 per month—above the SGA monthly cap. Consequently, Plaintiff's work as a forklift operator constitutes past relevant work because he worked the job between one and three months, and the worked constituted SGA.

Meanwhile, a hand packager is classified as having an SVP of two. Doc. 13-1 at 28. An SVP of two requires "anything beyond short demonstration up to and including 1 month" for proficiency.[4] The evidence of record shows that Plaintiff was employed as a hand packager in 2005 for approximately two to three months. *See* Doc. 13-1 at 206 (Work History Report stating that Plaintiff worked at a temp agency from June 1, 2005 to August 12, 2005—two and a half months); *see also* Doc. 13-1 at 44 (Plaintiff testified that he worked at the temp job for some time less than three to four months). In 2005 the SGA monthly earnings were capped at $830.00 per month. *See supra* at n.4. Plaintiff earned $1,128.00 in 2005. Doc. 13-1 at 43-44; 206 (although Plaintiff testified that he worked at a temp agency in 2006, the Work History Report indicates Plaintiff worked at the temp agency in 2005). Assuming Plaintiff worked as a hand packager for only two months, he earned $564.00 per month—below the SGA cap. In short, Plaintiff's work as a hand packager fails to constitute past relevant work as a matter of law because he earned less than SGA, even though he worked the job beyond one month.

---

[3] The threshold for annual SGA earnings can be found at http://www.ssa.gov/oact/cola/sga.html (last visited March 3, 2020).

[4] *Supra*, note 2.

Nonetheless, as Defendant correctly argues, the error is not reversible because there is no legal requirement that the ALJ give multiple examples of past relevant work. Doc. 18 at 9. Defendant is also correct that because Plaintiff had the burden of establishing that he was not capable of performing his past relevant work, *Wren*, 925 F.2d at 125, he should have at least contested the testimony of the VE on that issue through cross-examination, but failed to do so. *See* Doc. 13-1 at 65-68 (cross-examination of VE). Consequently, Plaintiff's argument lacks basis and merit. *See Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000) (a plaintiff "should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of [a vocational expert] witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing"); *Carol B. M. v. Berryhill*, No. 3:17-CV-3163-BK, 2019 WL 1403367, at *6 (N.D. Tex. Mar. 27, 2019) (Toliver, J.) (affirming Commissioner's decision when plaintiff failed to challenge the VE's characterization of plaintiff's past work during cross-examination).

**B. The ALJ did not err in finding that Plaintiff is able to perform his past relevant work.**

Plaintiff next argues that he cannot perform his past relevant work given the ALJ's RFC assessment because those jobs would expose Plaintiff to extreme heat and atmospheric conditions. Doc. 16 at 16. Plaintiff also argues that the ALJ failed to address inconsistencies between the VE's testimony and information in the DOT and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). Doc. 16 at 17-18.

As explained stated above, Plaintiff's argument is effectively waived because he had the burden to establish that he is unable to perform his past relevant work and, thus, was obligated to

challenge the VE's testimony on that issue during cross-examination. *See Carey*, 230 F.3d at 147; *Holland*, 2015 WL 5437727, at *13 n.4. Because Plaintiff failed to do so, the record simply does not support his argument.

That notwithstanding, Plaintiff's claim also fails on the merits. Plaintiff's arguments regarding the hand packager job are moot, for the reasons stated *supra*. As is relevant here, Plaintiff contends that the SCO provides that the job of forklift operator requires frequent contact with exposure to weather, and because of the ALJ's RFC limitation of avoiding "concentrated exposure to extreme heat, cold, wetness, and humidity," Plaintiff cannot perform that job. Doc. 16 at 16. But Plaintiff also notes, "extreme heat is defined as exposure to *non-weather related* hot temperatures." Doc. 16 at 16 (emphasis added). As such, Plaintiff's argument defeats itself since any supposed extreme heat in the forklift operator's job would, under the SCO definition, be weather-related.

## C. The ALJ fully developed the record.

Plaintiff argues that the ALJ erroneously offered a "medical conclusion" when he added additional limitations to Plaintiff's RFC, including limiting interaction with supervisors and the public, children, and places that sell or serve alcoholic beverages. Doc. 16 at 20. Plaintiff also asserts that the ALJ's holding that "Plaintiff had no limitation in adapting or managing [himself]" amounted to an improper "medical conclusion." Doc. 16 at 21. Additionally, Plaintiff contends that the ALJ erred in not obtaining an additional review by the state agency consultants in light of the additional MetroCare records Plaintiff provided in 2017 and the modified criteria for listings 12.04 and 12.06 under Paragraph B. Doc. 16 at 19-21.

Defendant responds that the ALJ relied on substantial evidence in the record to support the additional RFC restrictions, as Plaintiff has a history of alcoholism and has been convicted

for sexual assault with a minor.  Doc. 18 at 15; Doc. 13-1 at 39-40.  Defendant also notes that the ALJ was properly interpreting the medical evidence to determine Plaintiff's capacity to work and not "playing doctor."  Doc. 18 at 17.  Defendant contends that Plaintiff's additional medical evidence is consistent with that already on the record—reflecting that Plaintiff's medication was effective—and Plaintiff fails to explain how the subsequent MetroCare records advance his argument.  Doc. 18 at 14-15.  Upon review, Defendant's arguments have merit.

An ALJ owes a duty to a Social Security claimant to develop the record fully and fairly so as to ensure that the ALJ's decision is based on sufficient facts.  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam).  That duty must be balanced against the fact that Plaintiff bears the burden of proof through step four of the sequential evaluation process.  *Holifield v. Astrue*, No. 09-31125, 2010 WL 4560524, at *2 (5th Cir. Nov. 10, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).  An ALJ's decision must be reversed if the ALJ failed to fulfill this duty to develop the record, and the claimant was prejudiced thereby.  *Brock*, 84 F.3d at 728; *see also* 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

Here, the ALJ adequately developed the record and substantial evidence supports the ALJ's findings.  The duty to develop the record becomes necessary only when the claimant presents sufficient evidence to raise a suspicion concerning an impairment.  *See Jones v. Brown*, 829 F.2d 524, 526 (5th Cir. 1987).  Plaintiff did not meet that burden here.  Moreover, what Plaintiff categorically argues are the ALJ's "medical conclusion[s]," are simply the ALJ's findings relating to Plaintiff's capacity to work and are based on substantial evidence.  It is of no moment that the ALJ gave great weight to the opinions of the state agency consultants yet did

not adopt their opinions *in toto*, as it is within the authority of the ALJ to determine the weight to be given the evidence.

The non-exertional limitations in the ALJ's RFC are supported by substantial evidence. The medical evidence reveals that on a consistent basis, Plaintiff was adequately groomed, cooperative and organized in his thoughts, and was observed to have intact memory and be fully oriented.  Doc. 13-1 at 277, 286, 288, 290, 293, 295, 297, 303, 308, 331, 427, 429.  Plaintiff also testified that he dresses, bathes, and grooms himself, sometimes cooks, cleans the house, and helps with the dishes.  Doc. 13-1 at 52-53.  Thus, the evidence supports the ALJ's finding that Plaintiff had no limitations in adaptation and managing himself.

The ALJ's determination that Plaintiff should be restricted from working near children or alcohol is also supported by substantial evidence, as Plaintiff was convicted for sexual assault with a minor and has a remote history of alcohol abuse.  *See* Doc. 13-1 at 17, 39-40.  Also, Plaintiff's dispute of the RFC limiting his interaction with co-workers and supervisors is counterintuitive and lacks merit, since the additional restrictions actually narrowed the jobs available—to Plaintiff's advantage.  As such, there is no prejudice.

Plaintiff's contention that the state examining physicians' opinions from 2016 should have been updated in light of the revised criteria in paragraph B for determining listed impairments 12.04 and 12.06 and the additional MetroCare records submitted by Plaintiff, Doc. 13-1 at 18-20, is a non-starter.  First, the ALJ did consider the additional medical evidence provided by Plaintiff and assessed it under the revised listing requirements of Paragraph B.  Doc. 13-1 at 18-20, 25-27.  Further, the additional evidence, to-wit: MetroCare records from June 2016 through August 2017,  are consistent with the other medical evidence and, therefore, further reinforce the ALJ's findings.  *See* Doc. 13-1 at 277, 286, 288, 290, 293, 295, 297, 303,

11

308, 331, 427, 429. Plaintiff offers no support for the suggestion that the ALJ was obligated to obtain a further opinion from the state consulting medical examiners before analyzing the additional evidence in light of the changes in the listing criteria. Indeed, it is the responsibility of the ALJ to determine if a claimant's impairments meet a listing, and the ALJ merely did that here.

## IV. CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 16, should be **DENIED**, *Defendant's Motion for Summary Judgement*, Doc. 17, should be **GRANTED** and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on March 3, 2020.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).